U.S. DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
RECEIVED - SHREVEPORT
NOV 28 2007
ROBERT H. SHEMWELL, CLERK
BY DEPUTY

UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF LOUISIANA

SHREVEPORT DIVISION

---

YVONNE DOCKERY

versus

THE CITY OF SHREVEPORT

CIVIL ACTION NO. 06-1292
JUDGE TOM STAGG

---

**MEMORANDUM RULING***

Before the court is a motion for summary judgment filed by the defendant, the City of Shreveport ("the City"). See Record Document 27. For the reasons set forth below, the City's motion for summary judgment is **GRANTED**.

## I. BACKGROUND

On February 10, 2006, Officer Daniel Chumley ("Officer Chumley") of the Shreveport Police Department received a radio transmission from an off-duty officer in Bossier City, Louisiana, that a green Chevrolet Blazer was driving erratically on Interstate 220[1] proceeding from Bossier Parish towards Caddo Parish. Officer

---

*This ruling is not intended for commercial print or electronic publication.

[1]The City inexplicably refers to Interstate 220 as "Interstate 2-20" in both its brief and in the affidavit of Officer Chumley. See Record Document 27.

Chumley executed a traffic stop on the vehicle that was described, which was driven by the plaintiff, Yvonne Dockery ("Dockery"). Although Officer Chumley did not detect any odor of alcoholic beverages, Dockery's "physical condition" led him to believe that standardized field sobriety tests were necessary.[2] See Record Document 27, Ex. B at ¶3 (Affidavit of Officer Chumley).

Officer Chumley administered several sobriety tests to Dockery, including the Horizontal Gaze Nystagmus test, the walk-and-turn test, and the one-leg test. During the one-leg test, Dockery was only able to complete a count of less than ten seconds. For successful completion of the one-leg stand test, an individual is instructed to raise his foot six inches from the ground for thirty seconds. According to Officer Chumley, if an individual staggers, shakes, uses his arms for balance, or places the foot[3] down prior to the thirty seconds, this is an indication of

---

[2]This belief arose due to Officer Chumley's training in Standardized Field Sobriety Test Battery, including a sixteen hour course on the subject. During this training, Officer Chumley learned that various categories of narcotics, in addition to alcohol, can cause intoxication and can impair a driver. He learned to administer standardized field sobriety tests and to be aware of certain indicators for intoxication from either alcohol or various narcotics. He was taught that some categories of narcotics can produce negative results for certain standardized field sobriety tests, while causing positive results in others.

[3]In Officer Chumley's affidavit, this word was "food." See Record Document 27, Ex. B. at ¶4. The court will presume that the word was intended to be "foot."

intoxication.[4] Officer Chumley had learned during his training that "certain classes of narcotics may cause poor performance on the one-leg stand due to muscle tremors, but would not affect an individual's balance and thus their [sic] performance on a walk-and-turn test." Record Document 27, Ex. B at ¶3. Officer Chumley thus concluded that "[b]ased upon the radio transmission that plaintiff was driving erratically, as well as her poor performance on the one-leg stand test and the absence of an odor of alcoholic beverages about her person or breath," Dockery may have been under the influence of narcotics. Id., Ex. B at ¶5.

Officer Paul Cox was also present during the time that the standardized field sobriety tests were administered and stated in his affidavit that his "observations led [him] to believe that Ms. Dockery may in fact have been intoxicated." Record Document 27, Ex. C. Based on these conclusions, Dockery was transported to the Traffic Bureau Division of the Shreveport Police Department. Officer Chumley explained that "[b]ased on [his] observations at the scene, [his] purpose in transporting Ms. Dockery to the Shreveport Police Department was so that she would have the opportunity to submit to a breathalyzer, and then be examined by a

---

[4]The published policies or instructions of the police department regarding the standardized field sobriety tests would have been extremely beneficial to the court. However, due to Dockery's failure to properly rebut the motion for summary judgment, these items are ultimately unnecessary.

certified drug recognition expert."[5] Record Document 27, Ex. B at ¶7.

After arriving at the Shreveport Police Department, Officer Michael Bennett ("Officer Bennett") from the Traffic Bureau Division administered a breathalyzer test to Dockery, in compliance with department procedure for investigating an individual who is suspected of being intoxicated by narcotics. See Record Document 27, Exs. B & D.[6] After Dockery submitted a sample of .000% on the breathalyzer test, the next step in the procedure was to notify a certified drug recognition expert, who would complete a 12-step evaluation, as Officer Bennett was not certified as a drug recognition expert. A proper drug recognition evaluation must be completed in an enclosed, controlled room by a properly certified individual. See id. However, on the night in question, a certified drug recognition expert was not available and would not be available at any time in the foreseeable future. Therefore, Dockery was released from custody.

Dockery sued the City of Shreveport, alleging that "[t]he treatment [she] received was not called for."[7] Record Document 3. She seeks $300,000.00 in

---

[5]Officer Chumley was not a certified drug recognition expert.

[6]Again, the court notes that inclusion of copies of these procedures referred to by the officers would have been beneficial.

[7]Dockery also alleged in her three-page complaint that she was handcuffed too tightly, claiming that she suffered scars to her arms. She did not, however,

damages.[8] See id.

## II. ANALYSIS

### A. Summary Judgment Standard.

Summary judgment is proper pursuant to Rule 56 of the Federal Rules of Civil Procedure "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986). "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Stahl v. Novartis Pharm. Corp.,

---

seek medical attention for her alleged injuries and instead treated the injuries with Neosporin and alcohol. As Dockery does not allege any degree of physical harm greater than de minimis from the handcuffing, she has not satisfied the injury requirement of a section 1983 claim. See Tarver v. City of Edna, 410 F.3d 745, 752 (5th Cir. 2005).

[8]Dockery also asserted during her deposition that the basis for her traffic stop and detention was her race, and that she felt harassed because the officers were telling jokes in her presence. These unsupported allegations are nowhere to be found in either her complaint or her opposition to the defendant's motion for summary judgment and thus are not viable causes of action. See generally Glover v. City of Dallas, 221 F.App'x 311 (5th Cir. 2007); Schimek v. MCI, Inc., 2006 WL 2252034, *12 (N.D. Tex. 2006).

283 F.3d 254, 263 (5th Cir. 2002). If the movant demonstrates the absence of a genuine issue of material fact, "the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." Gen. Universal Sys., Inc. v. Lee, 379 F.3d 131, 141 (5th Cir. 2004) (citations and quotations omitted). Where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant, then summary judgment should be granted. See Boudreaux v. Swift Transp. Co.,402 F.3d 536, 540 (5th Cir. 2005).

**B. Dockery's Claims.**

Dockery is proceeding pro se and her complaint is inartfully pled.[9] Even though the Federal Rules of Civil Procedure require only minimal specificity, a coherent statement of the legal basis for each claim against the defendant would have assisted the court in rendering this ruling. Nevertheless, the court will address the claims that she apparently intended to assert against the City.

**1. Dockery's Federal Claims.**

Title 42, United States Code, section 1983 provides the remedy for

---

[9]For example, Dockery's complaint consisted of three, handwritten pages and her opposition to the defendant's motion for summary judgment contained only two pages of handwritten discourse. See Record Documents 4 and 35.

constitutional violations of the sort alleged by Dockery. Section 1983 reads:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983. Dockery fails to delineate any particular claims under this section. However, the court will assume that she intended to assert that the City is liable under the custom and policy provisions of section 1983. For the reasons that follow, any such federal law claim must fail.

Municipalities face liability under section 1983 when execution of a government's policy or custom, whether made by lawmakers or those whose acts represent official policy, inflict injury. See Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658, 694, 98 S. Ct. 2018, 2037-38 (1978). Proof of municipal liability sufficient to satisfy Monell requires that Dockery prove the following: (1) a local government or official promulgated a policy; (2) the policy decision displayed "deliberate indifference" and proved the government's culpability; and (3) the policy decision led to the particular injury–a constitutional violation whose "moving force" is that policy or custom. See Pineda v. City of Houston, 291 F.3d 325, 328 (5th Cir. 2002); see also In the Matter of Foust, 310

F.3d 849 (5th Cir. 2002).

Dockery has failed to identify *any* policy of the City that would trigger section 1983 municipality liability. Furthermore, Dockery has failed to either allege or prove that a policy was in any way linked to any alleged constitutional deprivation. Additionally, in order to hold a municipality or a local government unit liable under section 1983 for the misconduct of one of its employees, Dockery must allege that the custom was a cause-in-fact of the deprivation of rights inflicted. See Leffall v. Dallas Indep. Sch. Dist., 28 F.3d 521, 525 (5th Cir. 1994). To satisfy the cause-in-fact requirement, she must allege that the custom or policy served as the moving force behind the constitutional violation at issue. See Meadowbriar Home for Children, Inc. v. Gunn, 81 F.3d 521, 533 (5th Cir. 1996). Dockery's complaint does not even approach an actionable level and any federal claim she is attempting to assert must fail.

**2. Dockery's State Law Claims.**

Dockery appears to also attempt to assert a state law claim for false arrest. False arrest or imprisonment occurs when one arrests and restrains another against his will without warrant or other statutory authority. See Harris v. Eckerd Corp., 35,135, pp. 4-5 (La. App. 2 Cir. 9/26/01); 796 So.2d 719, 722. An officer may arrest a person without a warrant when the officer has reasonable cause to believe

that the person to be arrested has committed an offense, although not in the presence of the officer. See La. C. Cr. P. art. 213. Probable cause or reasonable cause for arrest as required by Louisiana Code of Criminal Procedure article 213(3) exists when the facts and circumstances within the arresting officer's knowledge, and of which he has reasonably trustworthy information, are sufficient to justify an average man of caution in the belief that an offense has been committed. See Wolfe v. Wiener Enter. Inc., 94-2409, p. 3 (La. 1/13/95); 648 So.2d 1293, 1295. The facts need not eliminate all possible innocent explanations in order to support a finding of probable cause. See Gibson v. State of La., 99-1730 (La. 4/11/00); 758 So.2d 782, 789.

Dockery's claim for false arrest and false imprisonment fail as a matter of law because probable cause existed to detain her. See Tabora v. City of Kenner, 94-613 (La. App. 5 Cir. 1/18/95); 650 So.2d 319, 322-23 (holding that an essential element of claims under Louisiana law of false arrest and false imprisonment is a lack of probable cause); Kyle v. City of New Orleans, 353 So.2d 969, 972 (La. 1977). The affidavits provided by Officers Chumley and Cox illustrate the existence of probable cause to detain and Dockery has not refuted any of their contentions with any competent summary judgment evidence. Accordingly, any claim Dockery attempted

to assert for false arrest must be dismissed.[10]

## III. CONCLUSION

For the reasons set forth above, summary judgment is **GRANTED** as to all claims by Dockery against the City.[11]

A judgment consistent with the terms of this Memorandum Ruling shall issue herewith.

**THUS DATED AND SIGNED** at Shreveport, Louisiana, this 28th day of November, 2007.



JUDGE TOM STAGG

[10]Assuming that Dockery asserted a claim for intentional infliction of emotional distress, it is clear that this claim also cannot pass muster. There are no actions of the City that were extreme and outrageous and caused her to suffer severe mental distress. See White v. Monsanto Co., 585 So.2d 1205, 1209 (La. 1991). Explaining the meaning of "extreme and outrageous" conduct, the Louisiana Supreme Court has stated, "The conduct must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." Id. at 1209. Under these well-defined standards, Dockery clearly has not stated a claim for intentional infliction of emotional distress.

[11]The City also filed a motion to dismiss for fraud in filing in forma pauperis. See Record Document 29. As Dockery's claims have been dismissed on summary judgment, this motion is **MOOT**.